Antony TIJERINA, Petitioner,

v.

CITY OF TYLER, Respondent.

No. D–2185.

Supreme Court of Texas.

Dec. 31, 1992.

Rehearing Overruled Jan. 27, 1993.

David R. Weiner, Thomas J. Stutz, Dallas, for petitioner.

Sharon K. Fisher, Gary C. Landers, Tyler, for respondent.

OPINION

DOGGETT, Justice.

We consider whether a fire department employee is entitled to pay for time spent on call and determine that both of the applicable statutes mandate such compensation.

### I.

Antony Tijerina worked as a fire investigator for the City of Tyler from September 16, 1984, through April 27, 1987. In addition to working a 40–hour week, Tijerina was sometimes available for recall while not on regular duty, during which time he would remain in contact with the fire department by use of radio pager or walkie-talkie. Although the City paid him for time spent on regular duty and for investigations he conducted when recalled, it did not compensate him for time spent on call while not performing other duties. Tijerina brought this action under two pre–1987 versions of article 1269p, § 6 [1] to recover compensation for that time. The trial court granted summary judgment for the City, and the court of appeals affirmed. 822 S.W.2d 799. We reverse the judgment of the court of appeals and remand for trial.

### II.

The pre–1987 versions of article 1269p, § 6,[2] provided in relevant part:

(b) ... [T]he number of hours in the work cycle [week] of members of the fire department whose duties do not include fighting fires, including but not limited to mechanics, clerks, investigators, inspectors, fire marshals, fire alarm dispatchers and maintenance men, shall not, *except in an emergency, average more hours in a week than* [exceed] the number of hours in the normal work week of the majority of the employees of said city other than fire fighters and police officers [firemen and policemen]....

(c) ... [I]n computing the hours in the work week *or the average number of hours in a work week in a work cycle of a fire fighter or other member of the fire department* [of firemen] subject to the provisions of *this section* [the preceding paragraph], there shall be included and counted any and all hours during which such *fire fighter or other member of the fire department is* [firemen are] required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio.

(d) *A fire fighter or other member of the fire department who is required in an emergency to work more hours in a work week or work cycle than authorized by Subsection (a) or (b) of this section is entitled to be paid overtime for the excess hours worked in accordance with Subsection (e) of this section without regard to the number of hours worked in any one week of the work cycle.*

(e) *A fire fighter or other member of the fire department* [Provided, however, that in any such city having more than ten thousand (10,000) inhabitants, in the event of an emergency, firemen] may be required to work more than the maximum hours herein provided; and in such event *the fire fighter or other member of the fire department* [firemen] working more than the maximum hours herein provided shall be compensated for such overtime at a rate equal to one and one-half times the compensation paid to *the fire fighter or other member of the fire department* [such firemen] for regular hours.[3]

---

**1.** The Legislature amended this statute both in June 1985 and August 1987, and thus two different pre–1987 versions apply to Tijerina's claim—one effective prior to June 1985 ("1959 version"), and one after ("1985 version").

**2.** The two versions are set out in the format used by the Legislature, in which language unique to the pre–1985 version is bracketed and struck out, language added by the 1985 amendments is italicized, and language common to both is in ordinary roman type. *See* Act of June 14, 1985, 69th Leg., R.S., ch. 725, § 1, 1985 Tex.Gen.Laws 2522–23.

**3.** Act of June 14, 1985, 69th Leg., R.S., ch. 725, § 1, 1985 Tex.Gen.Laws 2522–23 amended Act of June 1, 1959, 56th Leg., R.S., ch. 356, § 1, 1959 Tex.Gen.Laws 781–82. This statute was originally codified at art. 1583–1, section 6 of

Tijerina argues that both of these pre–1987 versions define time spent on call as work for which compensation is due, since the term "work week" or "work cycle" is defined to include hours during which an employee is "required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio." In 1985, "work cycle" was expressly defined to include "other member[s]" of the department as well as fire fighters. The 1959 version had the same effect by defining "work week" to include "firemen subject to the provisions of the preceding paragraph", which paragraph encompassed "members of the fire department whose duties do not include fighting fires."

■ While these unambiguous statutory definitions provide sufficient support for Tijerina's contention, he also appropriately relies on our only prior decision addressing this particular statute. In *Kierstead v. City of San Antonio,* 643 S.W.2d 118 (Tex. 1982), we stated that "[a]ny kind of official work assignment that does not include fire-fighting and exceeds the regular 40 hour week is compensable as overtime." *Id.* at 121 (interpreting the 1959 version). The City concedes that it assigned Tijerina to on call duty; such a mandatory directive is an "official work assignment" under this statute. This same statute in its 1959 form has been held twice to mean exactly what it says—that cities must pay fire department employees for time spent "available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio." *See Harrison v. City of Victoria,* 730 S.W.2d 119, 121 (Tex.App—1987, writ ref'd n.r.e.); *City of Brownsville v. Salazar,* 712 S.W.2d 577, 580 (Tex.App.—Corpus Christi 1986, no writ).

The court in *City of Dallas v. Spainhouer,* 758 S.W.2d 611, 621 (Tex.App.—Dallas 1988, writ denied), reached a con-trary result that the statute has at no time required a city to compensate fire department employees for portions of the "work week" or "work cycle" in which they are not actually working. This conclusion was based primarily on the last two paragraphs of the 1985 version and the last paragraph of the pre–1985 version, which establish the circumstances under which employees are entitled to overtime compensation. *Id.* at 614. "[R]equir[ing] overtime pay only for hours actually *worked* in excess of the maximum set by the statute," this provision allegedly does not require compensation for time spent on call that could be used for personal purposes and was thus not spent "on the job." *Id.* (emphasis in original).

■ This reasoning renders the statutory definitions of "work week" and "work cycle" meaningless. If the Legislature had not intended that fire department employees be paid for time spent on call, it would not have expressly included such time within these definitions. Whether or not time spent on call would ordinarily be considered "work" is not the determining factor when the statute clearly defines it as such. Statutory definitions must be given effect; ordinary meanings should be applied only to undefined terms. *See Hopkins v. Spring Indep. Sch. Dist.,* 736 S.W.2d 617, 619 (Tex.1987).

The City also argues that through 1987 amendments to article 1269p, § 6, the Legislature clarified its desire that cities not be required to pay employees for all periods of time they are subject to recall. Under these amendments, on call time is part of an employee's "work cycle" only when the employee "is required to remain ... on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes." Act of Aug. 31, 1987, 70th Leg., R.S., ch. 933, § 1, 1987 Tex.Gen. Laws 3124; Act of Aug. 4, 1987, 70th Leg., 2d C.S., ch. 63, § 1, 1987 Tex.Gen.Laws 203.[4]

the Texas Penal Code, until that code was revised in 1973 and the statute was redesignated art. 1269p, section 6, Texas Revised Civil Statutes.

**4.** The 1987 Legislature also repealed the statute and recodified it as TEXAS LOCAL GOVERNMENT CODE § 142.001. Act of May 1, 1987, 70th Leg., R.S., ch. 149 §§ 1, 49, 1987 Tex.Gen.Laws 707, 881–82, 1307. While the codification did not reflect the 1987 change to the statute, the amendment remained operative under the proviso of TEX. GOVT.CODE ANN. § 311.031(c). The Legislature reintroduced the above-quoted language to the codified version of the statute as part of Section 142.0015, which was added to the TEX.LOCAL

Without any explanation or support from the words of the statute or its legislative history, the City argues that this amendment is a "clarification" of prior versions rather than a change in their substance. *See Spainhouer*, 758 S.W.2d at 615. However, the 1987 amendments clearly changed the effect of the statute because paragraph (c) of the 1985 version and the corresponding portion of the pre-1985 version both provide that "any and all hours" during which an employee is required to remain in contact with the fire department by radio or telephone are part of the "work cycle" or "work week." To read the limitation imposed by the 1987 amendments into this definition would directly contradict the plain wording of the prior statutes.

## III.

■ The underlying issue posed by the dissent is whether a court should invalidate legislation when a judge declares this "strikes me as odd." 846 S.W.2d at 831. Surely the effect of this now repealed statute is "odd." The notion that public employees should be paid when principally engaged in personal pursuits does not strike any of the members of this Court as sound policy. But as judges, we are called upon to apply a statutory command even when it produces a policy of which we disapprove. To manipulate and misconstrue statutory language in the manner urged by the dissent would provide a precedent for abuse of judicial power far more costly than any matter directly at issue today.

While we may permissibly consider public policy in construing the intent of the Legislature from an ambiguous provision, we cannot rewrite or, as the dissent attempts to do, deconstruct a plainly worded statute because we believe it does not effectuate sound policy. *See Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983) ("[i]f the disputed statute is clear and

unambiguous extrinsic aids and rules of statutory construction are inappropriate") (citing *Ex Parte Roloff*, 510 S.W.2d 913, 915 (Tex.1974)); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985) ("[u]nless a statute is ambiguous, we must follow the clear language of the statute"). Today we do not approve the wisdom of the Legislature's decision to require that cities pay fire department employees for on call time, but we recognize that the Legislature in pre-1987 versions of the statute unequivocally implemented that requirement.

While the dissent contends that the Legislature's failure to define expressly "immediate call" and "continuously in contact" renders this enactment ambiguous, we disagree. The reading urged by the dissent contradicts the statutory language providing that employees be paid for remaining in contact "by telephone or radio." If, as the dissent argues, this phrase requires that employees remain at the fire station, 846 S.W.2d at 830, then there would obviously be no need for either employer or employee to contact one another by telephone or radio. Furthermore, if the Legislature's original policy choice was wrong, it was corrected when the statute was amended in 1987 to redefine work so that "[t]he time a person is required to leave a telephone number where he or she may be reached, or is required to remain accessible by radio or pager is not considered as hours worked." Act of Aug. 31, 1987, 70th Leg., R.S., ch. 933, § 1, 1987 Tex.Gen.Laws 3124. Apparently, the older provision also struck the Legislature as "odd," but that does not justify this Court's invalidating an unequivocal statutory command solely because a judge finds it personally displeasing. Accordingly, we disapprove of the writing in *Spainhouer*.[5]

Finally, the City claims that the Legislature inadvertently placed three paragraphs

---

GovT.Code in 1989. Act of March 1, 1989, 71st Leg., R.S., ch. 1, §§ 1(a), 24(a), 1989 Tex.Gen. Laws 1, 29.

5. That writing was persuasively critiqued:
the majority substitutes its rationale of what the Legislature must have intended for the consequences of what the Legislature plainly

did. Actions speak louder than words and here we do not even have words; only the active imagination of the majority and what it deduces must have been the Legislature's intent regarding the pre-1987 versions of the statute.
758 S.W.2d at 621 (Baker, J., dissenting).

of the 1959 version in the wrong order, and that, when appropriately reconstructed, that version's definition of "work week" applies only to fire fighters and not to other department employees. Even if the statute was ambiguous, such a radical construction would require compelling evidence of legislative intent, none of which the City offers. The statute plainly encompasses all employees of the fire department, including those who do not fight fires. *See Harrison,* 730 S.W.2d at 120 (rejecting a similar argument).

## IV.

We remand this case to the trial court to determine whether while Tijerina was on call he was required to remain in "continuous contact" with the department and was subject to "immediate call to duty," such that his on call duty was part of his "work cycle" or "work week" as defined by the pre–1987 versions of article 1267p, § 6. If his on call duty required him to be within reach by radio pager or telephone at all times, Tijerina was in "continuous contact"; and further, if his duty when called was to arrive in some reasonable amount of time, allowing for preparation and travel, he was subject to "immediate call."

## V.

We reverse the judgment of the court of appeals and remand to the trial court for proceedings consistent with this opinion.

HECHT, Justice, dissenting.

The Court holds that cities with more than 10,000 inhabitants were required by statute until 1987 to pay certain fire department employees overtime when they were not actually working but were on call. The Court defines "on call" to include time when employees were free to go about their affairs as long as they could be contacted by radio or telephone and could come to a fire scene within a reasonable time, allowing for preparation and travel. An hour after being summoned, more or less, was a reasonable response time for on call employees, according to the uncontroverted testimony in this case. The effect of the Court's holding is to require the public to pay fire department employees for *not* working—for time at home, at church, at the movies, at the park, shopping, mowing the grass, visiting friends, eating, and in bed asleep—for 24 hours a day, seven days a week, whenever they could be called to return to work. Thus, the City of Tyler must pay Antony Tijerina not only for all the regular and overtime hours he actually spent on the job, which it has already done, but additional overtime for the hours he spent on call during the 2½ years he was employed. Tijerina claims over $85,000 for 6,160 hours on call, which amounts to over nine extra hours per day, five days a week. Adding this sum to what Tijerina, a novice fire inspector in his mid–20's, has already been paid will result in his being compensated more than Tyler's Fire Chief with 30 years' experience, more than its Police Chief, more than its assistant city manager, and more than most of its department heads. In a related case, *Eckles v. City of Lubbock,* 846 S.W.2d 825 (Tex.1992) (per curiam), each of the three fire department employees claims at least $500,000 in overtime pay for on call time. This misapplication of public funds is required, according to the Court, because the Legislature clearly intended for taxpayers to pay public employees for not working. This is nonsense.

The Court's holding is based upon the language of Tex.Rev.Civ.Stat.Ann. art. 1269p, § 6, before it was amended in 1987.[1]

1. This statutory language was originally enacted in 1959, Act approved June 1, 1959, 56th Leg., R.S., ch. 356, § 1, 1959 Tex.Gen.Laws 781–782 (amending Act approved March 23, 1945, 49th Leg., R.S., ch. 38, 1945 Tex.Gen.Laws 55, formerly codified as Tex.Penal Code art. 1583–1 § 6), and was moved to Tex.Rev.Civ.Stat. art. 1269p in 1973, Act approved June 14, 1973, 63rd Leg., R.S., ch. 399 § 5, 1973 Tex.Gen.Laws 995, 996f, amended by Act approved June 14, 1985, 69th Leg., R.S., ch. 725, § 1, 1985 Tex.Gen.Laws 2522–2523. Article 1269p was again amended in 1987, Act approved June 20, 1987, 70th Leg., R.S., ch. 933, §§ 1, 3, 1987 Tex.Gen.Laws 3124–26, and Act approved Aug. 4, 1987, 70th Leg., 2d C.S., ch. 63, § 1, 1987 Tex.Gen.Laws 203, and recodified that year as Tex.Loc.Gov't Code § 142.-001, Act approved May 1, 1987, 76th Leg., R.S., ch. 149 §§ 1, 49, 1987 Tex.Gen.Laws 707, 881–82, 1307 (enacting Code and repealing art. 1269p). The provision was again renumbered in 1989 as §§ 142.0015 and 142.0017, Acts approved March 1, 1989, 71st Leg., R.S., ch. 1, §§ 1(a), and 24(a), (b), 1989 Tex.Gen.Laws 1, 26–31.

The former statute provided that the hours during which certain members of the fire department were "required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio" were to be included "in computing the hours in the work week". The pre–1987 statute did not define the phrase, "available for immediate call to duty", or the phrase, "continuously remaining in contact". Both phrases are crucial to this case and to a proper construction of the statute. The Court reads the former to mean being able to respond within some reasonable amount of time, allowing for preparation and travel. The Court does not consider the phrase to require that the employee remain at the fire station, although many employees were required to do so, and the amended statute now makes this requirement plain. The Court reads the latter phrase to mean being within reach by radio or telephone should the fire department choose to try to contact the employee. The Court does not consider the phrase to require the employee to remain actually on the radio or telephone to the fire department at all times, or even to call in periodically.

As the Court reads the statute, it "unambiguously" and "unequivocally" required the City of Tyler to pay Tijerina for time during which he concedes he was free to do as he pleased, as long as he could be reached by radio or telephone and could come to a fire scene within a reasonable time of being summoned. A reasonable time for Tijerina was an hour or so, according to all the testimony in the record. He was not required to remain at the fire station or even to call in. Ordinarily he could not leave the vicinity of Tyler while on call, but whenever he wished to do so, he simply asked a fellow worker to be on call in his place. He admits that he never had any difficulty leaving town whenever he wanted to. Although he characterizes being on call as an "inconvenience", the truth is that he was at home asleep for most of the time he now wants to be paid, and paid not just his regular time wage, but time-and-a-half overtime.

It strikes me as odd that the Legislature would ever have required cities to pay fire department employees more for being off duty and on call than for actually being on the job. This is so unlikely, it seems to me, that the Legislature surely could not have intended it without saying so very clearly. Yet no such clear expression of intent can be found in the statute. One *could* stretch "available for *immediate* call to duty" to mean "available for *reasonable* call to duty", but immediacy usually demands a much more urgent reaction, particularly in fire departments. It is less of a stretch, I suppose, to equate "continuously remaining in contact" with "continuously remaining contactable", although the two concepts are certainly not congruent. The Court's reading of the two key phrases in the statute is dubious at best, yet on such reading the Court reaches the highly unlikely conclusion that the Legislature unambiguously and unequivocally intended that fire department employees be paid more for less work.

The Court's reading of the statute makes on call time prohibitively expensive. A city would have been better off to have hired additional employees to sit at the station at full pay than to pay overtime at time-and-a-half rates to an employee at home asleep. The Legislature might as well have outlawed on call time altogether as to make it so expensive. It certainly could have done so. That it did not casts serious doubt on whether it intended to accomplish the same thing by means so subtle that Tijerina never realized he was being paid less than half what he was due the entire 2½ years he worked for the City of Tyler. The Court's statutory construction is hardly reasonable, let alone unambiguous.

The Court's improbable view also creates a conflict in the language of the former statute. The statute provided that fire department employees should be paid overtime if required to *work* more than regular hours. Being on call, as the Court has defined it, was compensable only if it was "work"; if it was not, then the statutory provisions are in conflict. The Court argues that the Legislature must have considered employees on call to be working, or

it would not have included on call hours in computing the work week. But this argument assumes that being on call entailed only a reasonable rather than immediate response time, and only contactability rather than actual contact. A fire inspector at home asleep is not at *work* in any reasonable sense of the word, simply because he may be telephoned to report to a fire scene. The Court's reference to *Kierstead v. City of San Antonio,* 643 S.W.2d 118, 121 (Tex. 1982), does not bolster its argument. There we said that "[a]ny kind of official work assignment ... is compensable as overtime." Being on call may be an official assignment, but in the circumstances of this case, it is not work.

The Court also argues that if being on call is not work, then it was meaningless for the Legislature to include on call hours in calculating a work week. Again, the flaw in the Court's argument is that being on call need not be defined so broadly as to include time when an employee's activities are largely unrestricted. If being on call were work, then the Legislature clearly intended that it be compensated, as is apparent from the 1987 amendments to the statute which provided that on call time is to be included in a work week only when an employee

> is required to remain ... on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes. The time a person is required to leave a telephone number where he or she may be reached, or is required to remain accessible by radio or pager is not considered as hours worked.

Act approved June 20, 1987, 70th Leg., R.S., ch. 933, § 1, 1987 Tex.Gen.Laws 3124 (amending former art. 1269p § 6(c). The Court argues that by this amendment the Legislature clearly intended a change in the law. The amendment could as well be a clarification as a change, but if it is a change, it remains unclear why the Legislature ever meant for an employee to be compensated for off-duty time which he could use effectively for his own purposes.

I think it indicative of the weakness in the Court's position that it distorts the caselaw interpreting the statutory provisions in issue. The Court states that the statute has been twice held to mean exactly what it says, citing *Harrison v. City of Victoria,* 730 S.W.2d 119 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.), and *City of Brownsville v. Salazar,* 712 S.W.2d 577 (Tex.App.—Corpus Christi 1986, no writ), two cases closer to its own view. Actually, all five cases which have construed the statute have concluded that it means what it says. Even the City of Tyler argues that the statute means what it says. That is not the issue, but merely a strawman easily overcome. The issue, rather, is what does the statute say, and on this issue the weight of authority opposes the Court's position. The two courts of appeals in this case and *Eckles,* which is also reversed by this Court today, have taken a directly contrary position, as did the court of appeals in *City of Dallas v. Spainhouer,* 758 S.W.2d 611 (Tex.App.—Dallas 1988, writ ref'd n.r.e.) (en banc). We are certainly not bound by any of these lower court decisions. To the extent they are important in our analysis, they do not, on balance, support the Court's position, and its claim to the contrary is demonstrably false.

Finally, the Court dismisses the argument that its view is absurd as being nothing more than a disagreement over the policy chosen by the Legislature. This, too, is merely rhetorical sleight. According to the Court, the underlying issue is "whether a court should invalidate legislation when a judge declares this 'strikes me as odd.'" *Ante* at 828. If this were the issue, the Court and I would be in agreement that a judge may not invalidate legislation merely because he disagrees with it. But of course, this is not the issue. The question is not whether we are to enforce a statute that is clearly absurd as written, but whether we are to read a statute that is not entirely clear as being absurd. The Court misstates the issue either because it cannot understand this distinction, or because it is afraid of the weakness of its position. The Court concedes that the statute as it construes it is not sound policy. But the Court attempts to blame this unsound policy, and its enormous burden on the public, on the Legislature. The Legislature is not so clearly at fault. The stat-

ute does not by its express language require payment for on-call time which the employee is free to spend on personal matters. This result is based entirely upon the Court's construction of the statute. The statute may also be construed, as I have suggested, to avoid what we all appear to agree is unsound policy. The Court has not answered why it will not do so.

I do not dispute that the wisdom of legislative policy may not always commend itself to the judiciary. When such disagreements arise, we are obliged to enforce legislative will so far as it may be permitted to extend. The issue is not whether this Court must enforce a clear statute, but whether the Court's reading is clear. I do not question the authority of the Legislature to require taxpayers to pay fire inspectors for 40 regular hours and 128 overtime hours each week, so that they are paid 24 hours a day, seven days a week, unlike any other public employee in the state, and more than any other city employee. The Legislature *could* have done this and then in 1987 changed its mind. It *could* have; but I do not believe it *did*.

Accordingly, I dissent.

CORNYN, J., joins in this dissenting opinion.